UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| NORMAN SHELTON, | : | CIVIL ACTION NO. 3:CV-13-0059 |
| | : | |
| Petitioner | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| A. JORDAN, et al., | : | |
| | : | |
| Respondents | : | |

FILED
SCRANTON
OCT 09 2014
PER _____
    DEPUTY CLERK

FILED
SCRANTON
OCT 09 ...
PER _____
    DEPUTY CLERK

## MEMORANDUM

Norman Shelton, an inmate currently confined in the United States Penitentiary, Florence, Colorado, filed this pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. 1, petition). Petitioner challenges "the legality of numerous sanctions of loss of good time as grossly excessive in proportion to the offense for which it is imposed", resulting in "an atypical and significant hardship that constricts Due Process under the Fourteenth Amendment totally subjecting Petitioner to Cruel and Unusual Punishment, violating his Eighth Amendment." Id.

By Memorandum and Order dated January 17, 2014, this Court found that the loss of twenty-seven (27) days of Good Conduct Time (GCT), for each misconduct fell within the range of acceptable punishments outlined by the applicable regulations, and denied Shelton's claim that the sanctions amounted to

an Eighth Amendment violation. See (Docs. 48-49). Shelton's claim that the total loss of GCT was illegal, in that it exceeded the number of GCT he is eligible to receive each year, was held in abeyance, pending supplemental briefing addressing the impact of the total loss of GCT on Shelton's sentence, and whether or not he is entitled to the restoration of any days of disallowed GCT. Id.

On February 6, 2014, Respondents filed a Second Supplemental Response (Doc. 53), and on February 25, 2014, Petitioner filed a traverse. (Doc. 54). For the following reasons, the remainder of the petition will be denied.

**Discussion**

In response to the request for supplemental briefing as to how the sanctions Shelton has received have been applied to the calculation of his sentence, Respondents submitted the Declaration of Dominick DeSanto, Paralegal Specialist at Allenwood Federal Correctional Complex, White Deer, Pennsylvania, along with supporting documentation and the following explanation of the BOP's computation of Petitioner's federal sentence and the disallowance of the relevant GCT:

> The Sentencing Reform Act ("SRA") was created for offenses committed on or after November 1, 1987, until September 12, 1994. DeSanto Decl. (Ex. A) ¶ 2. Shelton's criminal offense was committed during this time period. Id. An offender can earn Good Conduct Time ("GCT") credit on sentences over one year. See id. at 3. Under the SRA, Shelton was eligible to receive 54 days of GCT per year, which is awarded at the end of each year of term. (i.e. his anniversary date). See id. ¶ 4. The BOP has 15 days from Shelton's yearly

anniversary date each year to determine the amount of GCT to be awarded for that year. See id. ¶ 5.

If Shelton was disallowed GCT to be awarded for that year as a result of disciplinary proceedings, only the remainder of the 54 days would be awarded, and will vest, at that time. See id. ¶ 6. Credit that has vested may not later be withdrawn, except under very limited circumstances. See id. The most GCT an inmate sentenced under the SRA may be disallowed each year is 54 days. See id. ¶ 7. Even though Shelton believes that more than the 54 days was deducted from his earned GCT, this assumption is incorrect. Id.

BOP records demonstrate that during the relevant time period (December 22, 2009, to November 19, 2012), Shelton had the potential of earning 216 days of GCT; however, because he incurred 17 disciplinary infractions throughout this time, he did not earn nor was he awarded the maximum allowable 54 days GCT per anniversary year. See id. ¶ 9; BOP SENTRY Report, Sentence Monitoring Good Time Data (Att. 1 to DeSanto Decl. (Ex. A).) These facts are demonstrated by the "Max Dis" column of the report, which shows the amount of GCT Shelton earned each year; the "Actual Totals – Dis" column, which shows the amount of GCT disallowed through sanctions each year; and the "Vested Amount" column, which shows the amount of GCT that he was credited with at the end of each year. See id. If Shelton's claim was true – that the BOP illegally took away more GCT than he earned in a year – that Vested Amount would be a negative number.

Although Shelton received a total of 474 disallowed GCT days, only the maximum potential number of earned GCT days – 54 -- was disallowed for the alleged terms. DeSanto Decl. (Ex. A) ¶ 10. The additional sanctioned 258 days disallowance of GCT days were never subtracted from Shelton's earned GCT credits because the sanctions disallowed more GCT than Shelton could earn in a year. Id. Thus, Shelton's actual disallowed GCT total is 216, not 474 days. Id.

(Doc. 53, pp. 2-4).

In response to this explanation, Plaintiff boldly alleges that Respondents have committed fraud, and objects that DeSanto was not a witness at his hearing.

3

See (Doc. 54). He submits that Respondents committed perjury in stating that he received seventeen disciplinary infractions because not all misconducts were 200-level offenses. (Id.).

After review, Petitioner's claims of fraud and perjury are unfounded. Respondents did not allege that all his disciplinary infractions were 200-level offenses. Moreover, in this Court's prior opinion, the specific offense level of each misconduct and the amount of GCT that could be disallowed was discussed. See (Doc. 46). Considering the supplemental evidence received, it is determined that Shelton is not entitled to the restoration of any days of disallowed GCT, and the petition will be denied.

A separate Order will be issued.

Dated: October 9, 2014

                                                  **United States District Judge**